JOHN T. RATCLIFF v. IRON HILL FURNACE AND MINING COMPANY.

**Title by Prescription—Adverse Possession.**

> While adverse possession of real estate under claim of ownership based on a colorable title may ripen into a good title, one who enters as tenant under another cannot hold adversely to the rightful owner.

**Estoppel.**

> One buying possession from a mere squatter, who has no claim of title, is not estopped from disputing the title of his grantor, where such purchaser bases his title upon some other fact.

**Possession as Evidence of Title.**

> Possession is prima facie evidence of title, and one who asserts title against one in possession has the burden of showing title in himself.

APPEAL FROM CARTER CIRCUIT COURT.

February 15, 1877.

OPINION BY JUDGE COFER:

The appellant alleged that Wm. Alexander was, at his death, the owner and in possession of the tract which in the record is called

the William Royster or Alexander tract; that he had been in the actual possession and occupation of it for more than twenty years, claiming it as his own to a well defined marked boundary; that after Alexander's death his widow intermarried with J. W. Loubert, and she and Loubert sold and conveyed her life estate in one-third of the tract to Hannewell & Ellis; and that they and the Iron Hill F. & M. Co. were in possession, and were mining ore and cutting timber from the land. He also alleged that he had purchased and received a deed from the heirs of Alexander, conveying to him their interest, and he prayed for an injunction enjoining the appellee from cutting timber and mining on the land, and that the dower of the widow of Alexander be allotted to them.

They denied the alleged possession and title of Alexander, and averred that they were owners of the land; that it was a part of lot 23 of Graham's 80,406¼ acres; that lot 23 was owned by Joshua Owings, who sold and conveyed it to Hannewell & Ellis, who sold and conveyed it to the F. & M. Co.; that Owings had owned lot 23 for many years, and in 1844 leased it to Burrel Loubert, who held the same for him until he sold to Hannewell & Ellis; and that the F. & M. Co. was in possession, claiming it adversely to Alexander's heirs, when they sold and conveyed to the appellant. They also averred that Alexander was a squatter on the land, and neither had nor claimed title, but they did not deny the alleged purchase of the dower of Alexander's widow and the conveyance of that interest to Hannewell & Ellis.

King proves that he bought for Hannewell & Ellis of J. W. Loubert and his wife, and that they were then in possession and claimed it, thus showing that the appellee received possession from them. There is nothing to show that she claimed adversely to the heirs of her husband, nor that Loubert had any right except such as he possessed as husband of the doweress, and it must therefore be presumed, the contrary not having been proved, that its possession was amicable and not adverse. The appellee having entered under Loubert and wife in virtue of the deed conveying her interest for life in one-third of the land, it did not hold adversely to Alexander's heirs unless it did some open and notorious act which was sufficient to change an amicable into an adverse holding, of which there is no evidence. There was, therefore, an entire failure to prove a state of fact rendering the sale and conveyance from Alexander's heirs to the appellant champertous.

The appellee having entered under Loubert and wife, and in pre-

sumed amity with the title under which it held, and having contin-
ued, so far as appears, to so hold until after the conveyance from
Alexander's heirs to the appellant, the question arises whether it
can now dispute the appellant's title. It does not deny that it
bought the widow's dower, and it proves that it received the pos-
session from her and her husband; and it therefore held, as she had
done, that is, under her husband's title; and it can no more dispute
the title of her husband's heirs, or their vendee, than she could.

We do not mean to say that if Alexander was a mere squatter
without claim of title, and, holding the title, might not have bought
out the widow's possession without coming under an estoppel to dis-
pute the title of her husband's heirs. Possession in prima facie evi-
dence of title, and Alexander having been in possession and died in
possession, the continued subsequent possession of his widow inured
to the benefit of his heirs, and was prima facie evidence of title in
them, subject to her right to dower; and these facts cast upon the
appellee the burden of showing title in itself, and that Alexan-
der's possession was that of a mere squatter. Such proof was neces-
sary, not only to overcome the prima facie case made by the fact of
possession, but to avoid the estoppel which otherwise results from
their entry under the deed from Loubert and wife.

The appellee offered no proper evidence of title. It attempts to
establish title by the possession of the tenant, Burrel Loubert, but
the attempt was abortive. Loubert says himself that he took no con-
trol of the land, and never tried to keep any one from taking posses-
sion, and other witnesses prove that during the continuance of his
lease William Royster was in possession of the land, and that he sold
it to Patterson Wilburn, and Wilburn to Alexander, and that they
both had possession. We are therefore of the opinion that the appel-
lant manifested his right to the land subject to the appellee, and that
the court erred in dismissing his petition against the Iron Hill F. &
M. Co. and Hannewell & Ellis.

The claim to the John Royster tract stands upon somewhat differ-
ent footing. The evidence satisfactorily shows that Royster entered
on the land and marked out a boundary as early as 1832 or 1834, and
we incline to the opinion that he had possession for a period long
enough to give title by prescription. But we are not satisfied that
the Iron Hill F. & M. Co. was not in possession of a part of it, at
least, claiming adversely, when the appellant claims to have pur-
chased the interest of Royster's heirs. Smith seems to have had pos-

session of about 70 acres of the tract, and to have sold it to Burrel Loubert, who sold to King, and King to the Iron Hill F. & M. Co.

As to that part of the tract the possession, if there was any, at the time of appellant's purchase, was adverse, but there is nothing in the record to show with certainty whether there was then an actual possession. The appellee appears to have been in possession of at least a part of the land covered by Owings's deed to them, and unless the 70 acres procured through King and Loubert from Smith were actually occupied by some one else, the company was in constructive possession of the Smith tract, which lies within the Owings deed, provided it is not separated from that part of the land actually occupied by the company by lands owned by, or in the possession of others. But the record shows that the company does not own all the Owings lot, and those parcels not owned by it may, for anything appearing to the contrary, isolate the Smith 70 acres from every part of the lot owned by the company. If such is the case, then the company did not have possession, unless it had a tenant on the 70 acres, or on an adjoining tract under a lease covering it.

Herron says he was then on the Alexander tract and had that and the John Royster tract both under lease from the company, but whether the Smith 70 acres was embraced in his lease he does not distinctly say. As the residue of the John Royster tract, King says he bought it of Burrel Loubert, who was at that time in possession and claiming it as his own, except about one-half, which he bought of Pearce, who bought of Sarah Royster, the widow of John. That part purchased of Loubert we understand to be the Smith 70 acres, and that part purchased of Pearce we understand to be the portion retained by Royster or by his widow when the 70 acres were set off to Smith.

If Smith made a deed purporting to convey the absolute title to Loubert, or if Loubert made such a deed to King, or King to the company, and any one of said deeds was recorded when appellant purchased, or if Smith, Loubert, King, or the company, by itself or tenant, was in the actual occupancy of the 70 acres, or if that tract adjoined a part of the land purchased from Owings that was actually occupied by the company, or by a tenant under a lease covering it, when appellant bought, his purchase was champertous. And if Mrs. Royster had sold to King and made him a deed purporting to convey the absolute title, or King had so conveyed to the company, and the deed was recorded, or appellant had notice of it when he purchased, or if the Royster tract adjoined a part of the company's purchase

from Owings, which was actually occupied by it or its tenant, under a lease embracing the land sold by Mrs. Royster, then appellant's purchase was, as to that part, champertous.

The company's mere claim of possession does not render the purchase champertous; and from the imperfect and loose manner in which the pleadings are made up, the lack of a map showing the location of the land in contest with respect to the residue of the land covered by Owings's deed, the location of land occupied by Herron, and its relation to the parcel purchased of Mrs. Royster and that purchased of Smith, the absence of deeds or other writings or proof showing the character of the possession of Smith, and the interest Mrs. Royster attempted to sell, we are unable to arrive at a satisfactory conclusion in respect to the John Royster tract. The record, however, shows enough to satisfy us that the title of John Royter's heirs is valid, and that the appellant is entitled to the interest of such of those heirs as have transferred their rights to him, unless his right is defeated by a champertous purchase, and the burden of proving facts rendering the purchase void was on the company.

The judgment is *reversed* and the causes are remanded with directions to render a judgment establishing the appellant's title to the Alexander tract, to allot to the Iron Hill Furnace & Mining Co. one-third thereof during the life of the widow of Alexander, and to put the appellee in possession of the residue. The parties should be allowed, if they so desire, within a reasonable time, to amend their pleadings, or make further preparation, or both, in the other case.

Judge Elliott not sitting.

*Wm. Bowling, J. & J. W. Rodman, for appellant.*

*E. F. Dulin, for appellee.*